IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GEORGE JOSHUA HERRERA, and
CRYSTAL HERRERA SENA, as
Co-Personal Representatives of the
WRONGFUL DEATH ESTATE OF
GEORGE HERRERA,

    Plaintiffs,

v.                                         Cause No. 1:21-CV-00465-SCY-LF

THE VILLAGE OF ANGEL FIRE
and MARK FITCH, in his individual
capacity,

    Defendants.

## REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants The Village of Angel Fire ("AF") and AF Police Officer Mark Fitch ("Officer Fitch"), by and through their attorneys of record, Miller Stratvert P.A., file this Reply Brief in support of their Motion for Summary Judgment (Doc. 129) (hereafter "Motion") on Plaintiffs' Second Amended Complaint ("Complaint") (Doc. 1, Ex. C). For the reasons set forth in the Motion, in the First Amended Memorandum in Support of the Motion ("Memorandum") (Doc. 136), and below, this Court should grant Defendants' Motion.

### I.    ARGUMENT

Plaintiffs oppose Defendants' Motion by primarily relying on a procedural argument. *See* Plaintiffs' Response to Defendants' Motion (Doc. 150) (hereafter "Response"). Specifically, they argue that this Court ruled on Defendants' earlier filed Motion for Summary Judgment asserting qualified immunity (*see* Docs. 20 and 40), and therefore Defendants' current Motion is akin to a motion to reconsider. Response at pp. 1-2. Although Plaintiffs argue that Defendants have failed

1

to establish good grounds for filing their Motion (*id.*), they nonetheless address Defendants' Statement of Material Facts on the merits by relying on their previous briefing (*id.* at pp. 1, 6-9), and they assert that the new evidence presented "only add[s] to the factual disputes" (*id.* at p. 8). Defendants address these arguments in turn.

### A.   Defendants' Motion is not improper.

This Court denied Defendants' first Motion for Summary Judgment.  In its Order (Doc. 40), this Court observed that, based on the record before it at the time: (1) it was not clear how much time passed during the interaction between Officer Fitch and Mr. Herrera (*id.* at p. 3, fn. 2); (2) Officer Fitch's testimony seemed to imply that he did not tell Mr. Herrera to drop the knife after identifying himself as a police officer (*id.*); (3) Mr. Herrera did not charge Officer Fitch (*id.* at p. 17); (4) the distance between Mr. Herrera and Officer Fitch at the time of the shooting was twenty feet (*id.* at p. 4); and (5) Officer Fitch did not retreat before using deadly force (*id.* at p. 4). Defendants filed their renewed Motion for Summary Judgment to provide the Court further support of summary judgment in their favor.

In response to the Motion, Plaintiffs appear to argue that the Motion is a request for reconsideration rather than a renewed motion for summary judgment, and thus the Court must apply a different legal standard than that under Fed. R. Civ. P. 56.  *See* Response at pp. 1-3. Plaintiffs' argument ignores that the Motion seeks qualified immunity, and successive motions for summary judgment asserting qualified immunity are permissible.  *See Knox v. Southwest Airlines,* 124 F.3d 1103, 1105-06 (9th Cir. 1997) (analyzing a defendant's appeal taken from a second motion for summary judgment based on qualified immunity which "supplement[ed]" the previous motion and supplied "additional evidence" and holding: "We reject Knox's contention that successive motions for summary judgment on qualified immunity are impermissible.").

District courts have discretion to revise interlocutory orders prior to entry of final judgment. *Price v. Philpot*, 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Anderson v. Deere & Co.*, 852 F.2d 1244, 1246 (10th Cir. 1988) (citing Fed. R. Civ. P. 54(b)). Plaintiffs erroneously rely on *Servants of Paraclete v. Does* to support their argument. Response at 2. *Servants of Paraclete* involved an appeal of a district court's denial of two post-judgment Rule 60(b) motions. 204 F.3d 1005, 1008 (10th Cir. 2000). That is not the circumstance here, where no final judgment has been entered. *See Raytheon Constructors Inc. V. ASARCO, Inc.*, 368 P.3d 1214, 1217 (10th Cir. 2003) (indicating Rule 60(b) does not apply to an order that is not final).

In *Raytheon*, the plaintiff moved for reconsideration prior to the entry of final judgment. The district court treated the motion as a Rule 60(b) motion, even though it acknowledged that the plaintiff was seeking reconsideration of an interlocutory order rather than a final judgment. *Id.* at 1216. The Tenth Circuit concluded that "[t]he district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments." *Id.* at 1217. *See also Wagoner v. Wagoner*, 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991) (noting that a motion for reconsideration filed prior to final judgment "was nothing more than an interlocutory motion invoking district court's discretionary authority to review and revise interlocutory rulings prior to entry of final judgment."). These precedents establish that the Court has the general discretionary authority to review its prior, interlocutory Order regarding Defendants' motion for summary judgment on the grounds of qualified immunity, and it is not bound by the stricter standards for a Rule 60(b) motion.

Qualified immunity is important to "society as a whole" because it provides an immunity from suit, which would be effectively lost if a case is erroneously permitted to go to trial. *White*

3

*v. Pauly*, 580 U.S. 73, 79 (2017).  Accordingly, qualified immunity can be raised at any time.  *See MacArthur v. San Juan County*, 495 F.3d 1157, 1162 (10th Cir. 2007) ("We have consistently held, however, that 'qualified immunity can be raised at any time...'").  It can be raised at the inception of a case on a motion to dismiss or in a subsequent motion for summary judgment. *Behrens v. Pelletier,* 516 U.S. 299, 116 S. Ct. 834, 839 (1996).  It can also be raised at trial, although courts have urged lower courts to resolve the applicability of qualified immunity as soon as practicable.  *Estate of Escobedo v. Martin*, 702 F.3d 388, 398 n.4 (7th Cir. 2012).

To the extent that Defendants' Motion is viewed as a motion to reconsider, Defendants observe that their Motion: (1) corrects the typographical error in Officer Fitch's deposition testimony which implied that Officer Fitch did *not* tell Mr. Herrera to drop his knife after identifying himself as a police officer (Doc. 40, p. 3, fn. 2); (2) provides the new testimony of Wayne Jenkins and David Varela as to the distance between all the parties, the statements of Officer Fitch, and the actions of the parties; (3) provides the new testimony of John Murtagh pertaining to how long the incident lasted; and (4) provides the new testimony of Officer Fitch as to the distance between him and Mr. Herrera and the length of time of the incident.

**II.     No disputes in material fact preclude summary judgment.**

While Plaintiffs primarily rely on their procedural argument, they nonetheless swipe at the merits and quibble with some undisputed facts.  However, their arguments ignore testimony and other evidence, such as video, photos, and audio recordings.

**A.     Plaintiffs' attempt to recast the evidence fails.**

Plaintiffs assert that some of Defendants' Statements of Undisputed Material Fact ("SUMF") are "plainly contrary to other evidence in the record," and Plaintiffs "adopt by reference their complete Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment

4

(Doc. 29), along with all exhibits attached[.]" Response at p. 7. Thereafter, Plaintiffs make a series of allegations which they argue should preclude summary judgment. However, a review of the record demonstrates that summary judgment is proper.

- Plaintiffs assert that Officer Fitch had no suspects, did not suspect Mr. Herrera of a crime, and wanted to ensure Mr. Herrera was safe. Response at p. 7. They also assert that Officer Fitch had "no suspects regarding possible crime of arson." *Id.* The record shows that Officer Fitch believed arson might be involved (SUMF No. 6), that he knew an unknown man wearing a welding cap had been in the area (SUMF No. 3), and that he believed the unknown man could have been Mr. Herrera (SUMF No. 4). Officer Fitch sought to find Mr. Herrea to determine if he was safe and to "find out what he knows." SUMF No. 7. When Officer Fitch encountered Mr. Herrera two hours later wearing a welder's cap (and wielding a knife), he reasonably believed that Mr. Herrera was involved in arson, and when Mr. Herrera disobeyed repeated commands and approached with a knife, Mr. Herrera committed aggravated assault on a police officer. SUMF No. 29.

- Plaintiffs claim Officer Fitch fired his weapon from twenty feet away and that he was not retreating. Response at p. 7. The evidence before this Court plainly contradicts Plaintiffs claims. The lapel video shows Officer Fitch moving backwards when he discharges his weapon, and thereafter he takes three or four steps forward to reach Mr. Herrera after discharging his weapon. SUMF Nos. 17, 23; *see also Est. of Castaway by & through Castaway v. Traudt*, No. 116CV01763DDDMEH, 2019 WL 6700512, at *8 (D. Colo. Dec. 9, 2019) (disregarding a plaintiff's argument that a suspect was not within striking distance at the time he was shot while holding a knife, when "video of the incident shows exactly how far away he was from [the officer]"); *Martinez v. Mares*, No. 1:14-CV-00041 WJ-KBM, 2014 WL 11430939, at *7 (D.N.M. Aug. 27, 2014), *aff'd,* 613 F. App'x 731 (10th Cir. 2015) (citing *Scott v. Harris*, 550 U.S. 372, 379-380 (2007) and observing that there is no need for a court to wade into the fray of a dispute of fact between parties when a party's position is "blatantly contradicted by the record"). The lapel video shows Officer Fitch backing up (SUMF No. 17), David Varela testified that Officer Fitch was backing up (SUMF No. 24), and Wayne Jenkins testified that Officer Fitch was backing up (SUMF No. 21).

- Plaintiffs assert that the shooting occurred in an open area with room to move to the left and right. Response at p. 7. Again, the video and photographic evidence of the scene shows otherwise. Plaintiffs do not dispute that the shooting occurred in the horseshoe-shaped enclosure. As explained above, Officer Fitch was backing up as Mr. Herrera approached him with a knife. Where Officer Fitch was standing, before backing up, he could not move to his left or right. SUMF No. 27.

    **B.**  **David Varela's and Wayne Jenkins' testimony does not contradict their witness statements to the State Police.**

5

Plaintiffs complain that the statements of David Varela and Wayne Jenkins "contradict their prior statements to NMSP on the day of the shooting." Response at p. 8. Plaintiffs are incorrect.

Mr. Varela told the New Mexico State Police that he saw Officer Fitch "walking backwards" while Mr. Herrera approached with a knife (*see* Audio Recording of David Varela, at SUMF 24 at 4:25-30), that Mr. Herrera was "coming at [Officer Fitch]" and "charging" him (*id.* at 5:15-25). Mr. Varela reported that, just before the shooting, Mr. Herrera took "two or three quick steps" and he "sped up his movements" and that was when Officer Fitch discharged his weapon (*id.* at 6:10-35)[1]. Mr. Varela believed Mr. Herrera was "probably ten feet, if that" from Officer Fitch when he took the quick steps, and Officer Fitch then discharged his weapon when the two were "five, maybe six feet" apart (*id.* at 6:35-7:20). Plaintiffs also state that "Mr. Varela, in his statement to NMSP on the day of the shooting never reported that 'Mr. Herrera would have stabbed Officer Fitch.'" Response at p. 8. This is correct, and Mr. Varela's affidavit does not say otherwise.

Likewise, Plaintiffs take issue with Mr. Jenkins' statement and his recording. *Id.* They complain that Mr. Jenkins told the State Police three times that Mr. Herrera was "slowly closing the gap or advancing" on Officer Fitch. *Id.* (internal quotation omitted). To be clear, Mr. Jenkins told the State Police that Mr. Herrera had "something in his hand" and was making an "aggressive motion." *See* recording of Wayne Jenkins, attached to Doc. 136 at Exhibit 7A at 8:00-30. Mr. Jenkins stated Mr. Herrera was approaching Officer Fitch while Officer Fitch was backing up, and Mr. Herrera was "slowly" closing the gap between the two of them. *Id.* at 2:30-55, 6:10-35, 7:50-

---

[1] Plaintiffs attached the State Police audio recordings of both David Varela and Wayne Jenkins to their Response. Those recordings are identical to the copies Defendants already provided to this Court with Mr. Varela's affidavit and Mr. Jenkins' affidavit. *See* Doc 136 at Exhibits 7 and 7A, and 8 and 8A.

8:00.  He also stated: "I saw the guy running at the cop."  *Id.* at 8:30-35.  Mr. Jenkins reported that Mr. Herrera was "four to five feet" away from Officer Fitch at the time of the shooting.  *Id.* at 8:40-50.  He stated that he believed Mr. Herrera would have stabbed Officer Fitch based on Mr. Herrera's aggressive movements and because Mr. Herrera was "advancing fast toward the officer." *id.* at 14:05-26.  Put simply, Mr. Herrera was approaching Officer Fitch faster than Officer Fitch was backing up.  This eyewitness' account raises no factual disputes, and Plaintiffs' selective attempt to create an issue of fact does not discredit Mr. Jenkins' accounting.

Plaintiffs assert that Mr. Varela's and Mr. Jenkins' statements "only add to the factual disputes."  Response at p. 8.  Plaintiffs miss the point.  Mr. Varela's and Mr. Jenkins' combined testimony establishes that, *on the day of the incident*, they reported that: (1) they witnessed the entire incident[2]; (2) Officer Fitch gave repeated loud and clear commands to Mr. Herrera that Mr. Herrera ignored; (3) despite the fact that Officer Fitch was backing up, Mr. Herrera closed the distance between the two of them[3]; (4) Mr. Herrera was either "charging," or "running," or approaching "fast," or took "quick steps," or "sped up"; (5) Officer Fitch discharged his weapon at a distance consistent to what the lapel video shows, and not the asserted twenty feet that Plaintiffs claim; (6) both eyewitnesses stated that they feared for Officer Fitch's safety.

        C.     **The testimony of both Defendants' and Plaintiffs' experts supports summary judgement.**

---

[2] Plaintiffs have repeatedly asserted that there were no eyewitnesses to the shooting.  *See* Doc. 90 at p. 2 ("There were no eyewitnesses apart from Defendant Fitch and Mr. Herrera.  Mr. Herrera is deceased.  Fitch has given sworn testimony as to what occurred."); Doc. 116 at p. 2 ("There were no eyewitnesses apart from defendant Fitch and Mr. Herrera."); Doc. 20 at Response to SUMF No. 14 (stating that "Fitch is the only witness" to Defendants' assertion that Officer Fitch repeatedly told Mr. Herrera to stop and drop his knife).  Nonetheless, Plaintiffs argue that Mr. Varela's and Mr. Jenkins' "testimony" is not new because it was "known since the day of the shooting."  Response at p. 6.  First, Defendants dispute that audio recordings of witnesses' statements or notes in a police report constitutes "testimony."  Second, Mr. Jenkins' and Mr. Varela's recently executed affidavits *are* new testimony/evidence.  Third, Defendants agree that Plaintiffs have been aware of numerous eyewitnesses and earwitnesses since early-on in the case.
[3] Officer Fitch also testified that Mr. Herrera was approaching quickly.  SUMF No. 18.

Plaintiffs encourage this Court to disregard the testimony of the expert witnesses. Response at pp. 8-9. However, because Plaintiffs invite this Court to interpret/analyze Mr. Herreras' actions, this testimony is relevant. Plaintiffs argue that how Mr. Herrera held the knife does not evidence hostility. *Id.*; *see also* Doc. 29 at p. 17 (arguing that by holding the knife at his side, Mr. Herrera was not making any hostile motions). However, the primary threat of a bladed weapon is not in whether a suspect "gestures" with it or "points" it at an officer, but rather, whether the suspect is overtly making efforts to get close enough to use the weapon. *See Chappell v. City Of Cleveland,* 585 F.3d 901, 911-12 (6th Cir. 2009) (overruling a district court's denial of qualified immunity and concluding that although a suspect's blade was "pointed upward" and the suspect "was not waving the knife in a threatening manner," whether a "knife was held in a position more conducive to slashing than stabbing can hardly be deemed to undercut the formation of probable cause to believe that serious harm was imminently threatened.").

Likewise, to suggest that Officer Fitch could have retreated from an unfamiliar enclosure littered with debris and trip hazards, in the dark, while a knife wielding suspect was closing in and refusing commands, is objectively unreasonable and contrary to the expert testimony of both Defendants' and Plaintiffs' expert witnesses. *Stevens-Rucker v. City of Columbus, OH*, 739 F. App'x 834, 843 (6th Cir. 2018) (agreeing with the district court that although, after-the-fact, it was evident that an officer was in an "open space, there [wa]s no evidence he was aware of his surrounding at that time" given that "[i]t was dark, in an apartment complex" and the suspect "had stopped running to face [the officer] while holding a knife."). Finally, Officer Fitch testified he suspected Mr. Herrera of arson because he matched the description of the unknown man who was reported to be on the scene, and that Mr. Herrera committed assault on an officer by approaching and refusing to follow commands. SUMF No. 29.

D.     **Officer Fitch's declaration is not a sham.**

Plaintiffs incorrectly assert that Officer Fitch's declaration is a "sham," and they encourage this Court to disregard it. Response at pp. 9-11.

They complain Officer Fitch stated "for the first time" that he took three or four steps to reach Mr. Herrera from where he fired his weapon, and that the time between when he encountered Mr. Herrera and when he discharged his weapon was 20-25 seconds. Response at 9. Importantly, Plaintiffs never asked Officer Fitch either of these questions during his deposition – they never asked him how long the incident lasted and never asked how many steps he took to reach Mr. Herrera. Therefore, there is no contradiction in his testimony. Rather, Officer Fitch testified that when he first encountered Mr. Herrera, the two of them spoke and Officer Fitch answered Mr. Herrera's questions and identified himself. Thereafter. Mr. Herrera approached Officer Fitch with a knife. SUMF Nos. 8, 9, 10, 11, 12, 16, 17, 18, 19, 22. Officer Fitch also testified he was eight to ten feet from Mr. Herrera when he discharged his weapon. SUMF No. 22. Importantly, John Murtagh also testified in his deposition that the entire incident, from the time he heard shouting to the sound of a gunshot, was ten to twelve seconds. SUMF No. 26.

Plaintiffs dispute that the area was cluttered with debris and obstacles, and Officer Fitch could not move to his left or right, is wholly undermined by the video evidence (*see* Lapel video referenced at SUMF No. 23), the photographic evidence (*see* photographs of scene referenced in SFM No. 27), Officer Fitch's deposition testimony (SFM No. 27), and the eyewitnesses who testified they saw Officer Fitch backing up as Mr. Herrera was advancing (SUMF Nos. 21, 24). Officer Fitch's declaration in support of the Motion seeks to answer the specific questions this Court raised in its Order (Doc. 40) pertaining to how much time passed during the interaction, the distance between Officer Fitch and Mr. Herrera, whether Officer Fitch retreated, and the specifics

of Officer Fitch's testimony given the error in his deposition transcript. Officer Fitch's declaration is not a sham.

### III. The law was not clearly established at the time of Officer Fitch's use of force.

The evidence establishes that Mr. Herrera approached Officer Fitch with a knife *after* Officer Fitch identified himself (SUMF Nos. 9-12) and *while* Officer Fitch was commanding him to drop his weapon (SUMF Nos. 16-18). The entire incident lasted 20-25 seconds (SUMF No. 25), and Mr. Murtagh testified that from the time he heard Officer Fitch's first command until the gunshot was ten to twelve seconds (SUMF No. 26).

Whether the law is "clearly established" depends largely "upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). "A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017). Courts must not define "clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Instead, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Anderson*, 483 U.S. at 640).

Plaintiffs are mistaken when they argue that *Tenorio v. Pitzer*, 802 F.3d 1160, (10th Cir. 2015) is clearly established law that governs this case. *Tenorio* involved an intoxicated man holding a knife to his own throat. *Id.* at 1161-62. When officers entered the home, they heard no raised voices or disturbance, and Mr. Tenorio walked into the room "at an average speed" with a "blank stare" and carrying a "kitchen knife… loosely in his right hand." *Id.* at 1163. When Mr. Tenorio was two and one-half steps into the room, officers shouted for him to put down the knife and one officer shot him. *Id.* The incident lasted two or three seconds. *Id.* This case is markedly

different than *Tenorio*, as articulated in Defendants' Memorandum, including how long the incident lasted and the directives Officer Fitch gave to Mr. Herrera, as well as Mr. Herrera's demeanor and movements which Officer Fitch believed were deliberate like he was going "to do something."

The court's analysis in *Castaway*, 2019 WL 6700512 is helpful. In that case, officers shot a suspect after a forty-two second foot chase, "during which he had multiple opportunities to obey commands to stop and drop the knife." *Id.* at * 8. When officers shot Mr. Castaway, he was approaching an officer "faster than the latter could retreat, with a knife raised at least to shoulder-level, and the officer had only seconds to react." *Id.* As the officer retreated, he stumbled and believed that he either might trip or that he had limited room to retreat further. *Id.* The court examined other cases, including *Tenorio*, and concluded that the totality of the circumstances were significantly different from established law, and thus the court could not say that the other cases were so analogous to have "placed the statutory or constitutional question beyond debate." *Id.*

Neither the facts in this case nor the facts in *Castaway* closely align with *Tenorio*, such that a "reasonable official in the defendant's shoes would have understood that he was violating" the constitution. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Put another way, *Tenorio* should not be read "too broadly in deciding whether a new set of facts is governed by clearly established law," and it would be too broad a reading to apply the facts of *Tenorio* to the facts here to establish "an obvious case in which any competent officer would have known that shooting" Mr. Herrera would violate the Fourth Amendment. *Id.* at 1153-54; *see also Castaway*, 2019 WL 6700512 at * 9 (observing the same). Because no controlling Tenth Circuit or Supreme Court precedent is sufficiently analogous to the facts of this case, Officer Fitch could not have had notice that his

actions violated the law, and Plaintiffs have not met the second prong of the qualified immunity test.

## IV.     The Court should also dismiss Plaintiffs' tort and punitive damages claims.

Plaintiffs offer no argument to support their remaining claims, including for punitive damages. *See generally* Response. Without supporting argument, and in light of the fact that Officer Fitch's conduct was objectively reasonable, the Court should dismiss Plaintiffs' remaining claims.

## V.     CONCLUSION

Officer Fitch's actions did not violate Mr. Herrera's state or federal constitutional rights, and there is no precedent sufficiently analogous to this case such that Officer Fitch would have been on notice that his actions were violative of the law. As a result, Officer Fitch and the Village of Angel Fire are immune from all liability under the Tort Claims Act and Section 1983. For all of these reasons, the Court should grant Defendants' renewed motion for summary judgment.

WHEREFORE, Defendants respectfully request that the Court grant the Motion for Summary Judgment.

Respectfully submitted,

MILLER STRATVERT P.A.

By: */s/ Luke A. Salganek*
   Luke A. Salganek
   Charlotte A. Lamont
   P.O. Box 1986
   Santa Fe, New Mexico 87504-1986
   Telephone: (505) 989-9614
   *Attorneys for Defendants*

I HEREBY CERTIFY that on the 22nd day of August, 2023, I filed the foregoing pleading electronically through the CM/ECF Filing system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jamison Barkley
Law Office of Jamison Barkley, LLC
316 Garfield Street
Santa Fe, NM 87501
Email: jamison@jamisonbarkley.com

Dorie Biagianti Smith
Dorie Biagianti Smith Law, LLC
310 Garfield Street
Santa Fe, NM 87501
Email: dbiagiantismith@lawyer.com


By: */s/ Luke A. Salganek*
Luke A. Salganek